NO. 4-05-0247          Filed: 8/23/06

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS,<br>　　　Plaintiff-Appellant,<br>　　　v.<br>ALFRED ROBERSON,<br>　　　Defendant-Appellee. | ) Appeal from<br>) Circuit Court of<br>) Vermilion County<br>) No. 04CF617<br>)<br>) Honorable<br>) Thomas J. Fahey,<br>) Judge Presiding. |

JUSTICE APPLETON delivered the opinion of the court:

A police officer stopped defendant, Alfred Roberson, for a traffic violation. Roberson had a passenger, Anthony Evans. The officer asked Evans for his name, Evans told him, and the officer checked for any outstanding warrants for Evans's arrest. Upon learning of such a warrant, he arrested Evans. In a search of the car incident to the arrest, the officer found contraband, whereupon he arrested Roberson, too. The State charged Roberson with possession of a controlled substance (720 ILCS 570/402(c) (West 2004)) and possession of a controlled substance with intent to deliver (720 ILCS 570/401(c)(2) (West 2004)).

Roberson moved to suppress the evidence, and the trial court granted the motion on the authority of People v. Harris, 207 Ill. 2d 515, 802 N.E.2d 219 (2003), vacated & remanded, Illinois v. Harris, 543 U.S. 1135, 161 L. Ed. 2d 94, 125 S. Ct. 1292 (2005), apparently unaware that the Supreme Court of the United States vacated Harris eight days earlier. The State appeals, arguing we should reverse the trial court's

judgment for the same reason the Supreme Court of the United States overturned Harris, namely, the judgment is inconsistent with Illinois v. Caballes, 543 U.S. 405, 160 L. Ed. 2d 842, 125 S. Ct. 834 (2005). We agree with the State's argument. Because the warrant check on Evans violated no constitutionally protected interest in privacy, it did not change the fundamental nature of the traffic stop. Therefore we reverse the trial court's order granting Roberson's motion to suppress evidence and quash his arrest, and we remand this case for further proceedings.

## I. BACKGROUND

Roberson moved to suppress the evidence on the ground that he never consented to a search of his car and the search was not incident to his own arrest. In a hearing on the motion on March 2, 2005, defense counsel told the trial court:

"MR. CLARK: Judge, actually [the prosecutor] and I have agreed to stipulate. This hearing was held--

THE COURT: On the other guy.

MR. BRINEGAR [(prosecutor)]: February 15[,] [2005].

MR. CLARK: --on the co-[d]efendant. The [c]ourt heard the evidence at that time from the officer who would have testified in this case. The testimony would be precisely the same, and I believe that Mr. Brinegar is also conceding that the [c]ourt would rule exactly the same way based on the Harris case.

MR. BRINEGAR: Well, I'm conceding that there's a high likelihood that the [c]ourt would. The facts could be

- 2 -

stipulated[-]to that[,] I believe[,] there was a valid traffic stop. The sole reason for the search of the car, however, was the officer's questioning of the passenger, Anthony Evans, which[,] under Harris[,] is impermissible, and the [c]ourt so found. The subsequent search after the questioning of Evans, discovering that he was wanted on a warrant--

THE COURT: Yeah, this guy hadn't done anything, had he?

MR. CLARK: Speeding ticket.

THE COURT: Speeding ticket.

MR. BRINEGAR: Right. He was the driver of the car. Dennis Rogers thought he recognized Anthony Evans, asked him his name. He confirmed he was Anthony Evans.

Rogers checked for warrants on Evans. There was an outstanding warrant. Then[,] after placing Evans under arrest, the car was searched. Contraband was found between the front passenger seat and the armrest in the center of the seat.

THE COURT: Right. Right. Okay.

MR. BRINEGAR: And the only thing that Roberson had done is be the driver of a car that was stopped on what everybody appears to agree was a valid traffic stop. Nothing was found on Roberson.

MR. CLARK: It's our contention--our contention is[,] for a speeding ticket[,] he never should have been asked out of the vehicle. He never should have been patted down, and the passenger compartment of the vehicle never should have been searched.

THE COURT: Anything else?

MR. BRINEGAR: No.

THE COURT: I agree. Well, Harris--and I don't even know whether [Wong Sun v. United States, 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963),] is still the one that is cited. Fruit of the poisonous tree would also be applicable in this particular thing. Once invalid, everything else is invalid subsequent thereto. And I have ruled that Evans was an illegal stop and/or arrest. That's the one where the police officers--they've changed their whole procedure now. Is that--

MR. BRINEGAR: That's what Dennis Rogers testified to.

THE COURT: Right. Because of the--because of the Harris case.

MR. BRINEGAR: The Harris case.

THE COURT: And that they realized that they were in contravention of the [c]onstitution.

- 4 -

The motion to suppress will be allowed."

The State filed a certificate of impairment.

This appeal followed.

## II. ANALYSIS

### A. Our Standard of Review and the Burdens
of Persuasion and Production

When ruling on a motion to suppress evidence, a trial court might have to choose between competing versions of fact or weigh the credibility of witnesses; to that extent, we defer to the trial court unless we find these factual determinations to be "manifestly erroneous" in light of the record. People v. Gonzalez, 204 Ill. 2d 220, 223, 789 N.E.2d 260, 263 (2003). The term "manifest error" means error that is "clearly evident, plain, and indisputable." People v. Ruiz, 177 Ill. 2d 368, 384-85, 686 N.E.2d 574, 582 (1997). Insomuch as the facts are undisputed, our standard of review is de novo; we decide, without any deference to the trial court, whether the law requires suppression of the evidence under those facts. People v. Gherna, 203 Ill. 2d 165, 175, 784 N.E.2d 799, 805 (2003).

Our standard of review assumes a certain division of labor between the defendant and the State. On a motion to suppress evidence, the defendant has the ultimate burden of persuasion: the defendant must convince the trial court that the search or seizure was unlawful. 725 ILCS 5/114-12(b) (West 2004); People v. Ramsey, 362 Ill. App. 3d 610, 614, 839 N.E.2d 1093, 1097 (2005). The burden of production, or the burden of coming forward with evidence, first falls upon the defendant and then, if the defendant makes out a prima facie case, shifts to the State. Once the defendant

comes forward with evidence from which one could reasonably find an unlawful search or seizure, the State must come forward with evidence justifying the search or seizure. Ramsey, 362 Ill. App. 3d at 614, 839 N.E.2d at 1097.

## B. The Extent of Forfeiture by the State

Roberson observes that "in the suppression hearing, the State literally made no argument against the suppression of the evidence[] and advanced no alternate basis for why the search was valid. [Citation.] As such [sic], the State has waived argument about the nature of the search ***." We agree that the State was totally acquiescent. The prosecutor never mentioned the vacation of Harris. Indeed, he offered no reason at all for overruling the motion for suppression of evidence. He merely conceded that, under Harris, "the questioning of the passenger, Anthony Evans, [was] impermissible." Thus, in the record before us, the motion was unopposed. The rule of forfeiture applies to the State just as it applies to the defendant. People v. O'Neal, 104 Ill. 2d 399, 407, 472 N.E.2d 441, 444 (1984). As appellant, the State cannot make an argument on appeal that the State never made in the suppression hearing. See O'Neal, 104 Ill. 2d at 407, 472 N.E.2d at 444.

In the same sentence of his brief, Roberson states, however, that because of this forfeiture, the State "is limited to the argument it has made regarding Harris['s] having been vacated." He thereby concedes the State's right to assert, on appeal, the Supreme Court's vacation of Harris as a ground for reversing the trial court's judgment in the present case. We will proceed accordingly.

## C. The Legal Significance of the Supreme Court's Vacation of Harris

- 6 -

## 1. Checking for Warrants on a Passenger During a Traffic Stop

In <u>Harris</u>, 207 Ill. 2d at 517, 802 N.E.2d at 221, a police officer pulled over a driver for making an illegal turn and, in the course of the traffic stop, requested identification from the defendant, a passenger in the vehicle. The officer radioed the information from the defendant's identification card to the county dispatcher's office and learned of a warrant for the defendant's arrest. <u>Harris</u>, 207 Ill. 2d at 518, 802 N.E.2d at 222. The officer arrested the defendant and, in a search incident to the arrest, found cocaine in the defendant's pocket. <u>Harris</u>, 207 Ill. 2d at 518-19, 802 N.E.2d at 222. The issue on appeal was "whether a police officer, having obtained an identification card from a passenger in a vehicle during a traffic stop, [could] perform a check to determine whether there [were] outstanding warrants for the passenger's arrest." <u>Harris</u>, 207 Ill. 2d at 516-17, 802 N.E.2d at 221.

Our supreme court held that by stopping the vehicle, the police officer seized all of its occupants, including the passenger. <u>Harris</u>, 207 Ill. 2d at 522, 802 N.E.2d at 224. The fourth amendment required that the seizure be reasonable. <u>Harris</u>, 207 Ill. 2d at 522, 802 N.E.2d at 224. Because a traffic stop was analogous to an investigatory stop pursuant to <u>Terry v. Ohio</u>, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968)), a court was to "judge[] the reasonableness of a traffic stop by reference to <u>Terry</u>'s dual inquiry." <u>Harris</u>, 207 Ill. 2d at 522, 802 N.E.2d at 225. Under this dual inquiry, a traffic stop was reasonable if (1) "the officer's action in initiating the stop was justified" and (2) "the officer's action during the course of the stop was reasonably related in scope to the circumstances which justified the [stop] in the first place." <u>Harris</u>, 207 Ill. 2d at 522-23, 802 N.E.2d at 225. With reference to the second part of the dual

- 7 -

inquiry, the fourth amendment would not allow the officer to """fundamentally alter[] the nature of the stop by converting it into a general inquisition about past, present[,] and future wrongdoing, absent an independent basis for reasonable articulable suspicion or probable cause.""" Harris, 207 Ill. 2d at 523, 802 N.E.2d at 225, quoting Gonzalez, 204 Ill. 2d at 235, 789 N.E.2d at 269, quoting United States v. Holt, 264 F.3d 1215, 1240 (10th Cir. 2001) (Murphy, J., concurring in part and dissenting in part).

The police officer in Harris was justified in pulling the vehicle over because he saw the driver make an illegal turn. Harris, 207 Ill. 2d at 525, 802 N.E.2d at 226. Thus, the traffic stop was reasonable in its inception, satisfying the first part of Terry's dual inquiry. Harris, 207 Ill. 2d at 525, 802 N.E.2d at 226.

The next question was whether the officer's actions during the course of the traffic stop were reasonably related in scope to the circumstance that justified the stop in the first place, i.e., the illegal turn. His request to the passenger for identification was innocuous and did not change the fundamental nature of the stop. Harris, 207 Ill. 2d at 525, 802 N.E.2d at 226. Besides being innocuous, the request was within the scope of the circumstance justifying the stop because the defendant, a passenger, was a potential witness to the illegal turn and the officer could reasonably try to identify him for that reason. Harris, 207 Ill. 2d at 525, 802 N.E.2d at 226.

But the police officer did more than ask the passenger for identification; he then used the passenger's identification card to check for any outstanding warrants on him. Harris, 207 Ill. 2d at 525, 802 N.E.2d at 226. As the supreme court had recently held in Gonzalez, 204 Ill. 2d at 233, 789 N.E.2d at 269, "the scope inquiry" (the second element of Terry's dual inquiry) was "dependent upon both the duration of the traffic

- 8 -

stop and the manner in which the stop [was] conducted." (Emphases added.) Harris, 207 Ill. 2d at 525, 802 N.E.2d at 226. The warrant check on the passenger had nothing to do with the justification for the traffic stop; nor was it supported by a reasonable, articulable suspicion that the passenger had committed, or was about to commit, a crime. Harris, 207 Ill. 2d at 526-27, 802 N.E.2d at 227. The supreme court stated:

> "The warrant check performed on [the] defendant could well have lengthened the duration of the detention if the officer had to wait for the results of the warrant check. Under the circumstances at bar, however, regardless of the duration of the detention, the warrant check was impermissible because it changed the fundamental nature of the traffic stop. The warrant check converted the stop from a routine traffic stop into an investigation of past wrongdoing by [the] defendant."
> Harris, 207 Ill. 2d at 528, 802 N.E.2d at 228.

Thus, depending on the evidence, the warrant check might have lengthened the duration of the traffic stop, but, in any event, it changed the manner in which the traffic stop was conducted, transforming the fundamental nature of the stop from a routine investigation of a traffic offense to "'a general inquisition about [the passenger's] past *** wrongdoing, absent an independent basis for reasonable articulable suspicion or probable cause.'" Harris, 207 Ill. 2d at 528, 802 N.E.2d at 228, quoting Holt, 264 F.3d at 1240 (Murphy, J., concurring in part and dissenting in part). The supreme court concluded that the warrant check failed the second part of Terry's dual inquiry and, therefore, the seizure of the defendant was unreasonable. Harris, 207 Ill. 2d at 530,

802 N.E.2d at 229.

On February 22, 2005, the Supreme Court of the United States issued an order vacating the judgment of the Supreme Court of Illinois in Harris and remanding the case "for further consideration in light of [Caballes]." Harris, 543 U.S. 1135, 161 L. Ed. 2d 94, 125 S. Ct. 1292. The Supreme Court of Illinois has not yet issued a new opinion in Harris.

### 2. Having a Drug-Detecting Dog Sniff the Outside of the Vehicle During a Traffic Stop

In Caballes, 543 U.S. at 406, 160 L. Ed. 2d at 845, 125 S. Ct. at 836, an Illinois state trooper stopped the defendant for speeding. As the defendant was sitting in the squad car and the trooper was writing him a warning ticket, a second trooper showed up with a narcotics-detection dog and walked the dog around the defendant's car. Caballes, 543 U.S. at 406, 160 L. Ed. 2d at 845-46, 125 S. Ct. at 836. The dog smelled an odor coming from the trunk. The officers searched the trunk, found marijuana, and arrested the defendant. Caballes, 543 U.S. at 406, 160 L. Ed. 2d at 846, 125 S. Ct. at 836. The entire incident lasted less than 10 minutes. Caballes, 543 U.S. at 406, 160 L. Ed. 2d at 846, 125 S. Ct. at 836.

The Supreme Court of Illinois held that the use of the drug-sniffing dog "'unjustifiably enlarg[ed] the scope of a routine traffic stop into a drug investigation.'" Caballes, 543 U.S. at 407, 160 L. Ed. 2d at 846, 125 S. Ct. at 836-37, quoting People v. Caballes, 207 Ill. 2d 504, 510, 802 N.E.2d 202, 205 (2003), vacated & remanded, 543 U.S. 405, 160 L. Ed. 2d 842, 125 S. Ct. 834. In other words, the manner of the detention offended the scope doctrine, the second part of Terry's dual inquiry. The

- 10 -

Supreme Court of the United States granted <u>certiorari</u> on the following question: whether the fourth amendment (U.S. Const., amend. IV) required a reasonable, articulable suspicion to justify using a drug-detection dog to sniff the outside of a vehicle during a legitimate traffic stop.  <u>Caballes</u>, 543 U.S. at 407, 160 L. Ed. 2d at 846, 125 S. Ct. at 837.

The Supreme Court agreed that a traffic stop was a seizure and, even though the seizure was "lawful at its inception," it could "violate the [f]ourth [a]mendment if its manner of execution unreasonably infringe[d] interests protected by the [c]onstitution."  <u>Caballes</u>, 543 U.S. at 407, 160 L. Ed. 2d at 846, 125 S. Ct. at 837.  For instance, if the justification of the seizure was solely to issue a warning ticket, the seizure could "become unlawful if it [were] prolonged beyond the time reasonably required to complete that mission" (<u>Caballes</u>, 543 U.S. at 407, 160 L. Ed. 2d at 846, 125 S. Ct. at 837)--the Supreme Court cited <u>People v. Cox</u>, 202 Ill. 2d 462, 782 N.E.2d 275 (2002), as an example (<u>Caballes</u>, 543 U.S. at 407-08, 160 L. Ed. 2d at 846, 125 S. Ct. at 837).  In <u>Caballes</u>, however, the trial court found that the duration of the stop was "entirely justified," a finding the Supreme Court accepted.  <u>Caballes</u>, 543 U.S. at 408, 160 L. Ed. 2d at 846-47, 125 S. Ct. at 837.

Considering that the duration of the seizure was reasonable for a traffic stop, the Supreme Court disagreed with our supreme court that the dog sniff, in itself, changed the character of the traffic stop.  <u>Caballes</u>, 543 U.S. at 408, 160 L. Ed. 2d at 847, 125 S. Ct. at 837.  The Supreme Court stated:

"In our view, conducting a dog sniff would not change the

character of a traffic stop that is lawful at its inception and

- 11 -

otherwise executed in a reasonable manner, unless the dog

sniff itself infringed [the defendant's] constitutionally

protected interest in privacy.  Our cases hold that it did not."

Caballes, 543 U.S. at 408, 160 L. Ed. 2d at 847, 125 S. Ct.

at 837.

The Supreme Court reasoned that to be a "search" within the meaning of the fourth

amendment, the official conduct had to "'compromise [a] legitimate interest in privacy.'"

(Emphasis added.)  Caballes, 543 U.S. at 408, 160 L. Ed. 2d at 847, 125 S. Ct. at 837,

quoting United States v. Jacobsen, 466 U.S. 109, 123, 80 L. Ed. 2d 85, 100, 104 S. Ct.

1652, 1661 (1984).  No one had a legitimate interest in possessing contraband;

therefore, if the official conduct-- intrusive though it was--"only reveal[ed] the possession

of contraband," it was not "a search subject to the [f]ourth [a]mendment."  (Emphasis in

original.)  Caballes, 543 U.S. at 408, 160 L. Ed. 2d at 847, 125 S. Ct. at 837.  No doubt,

the defendant wanted to keep the marijuana in the trunk of his car private, but "society"

did not deem his interest in privacy to be reasonable in that respect.  Caballes, 543 U.S.

at 408-09, 160 L. Ed. 2d at 847, 125 S. Ct. at 837-38.  The defendant conceded that

canine drug-sniffs, properly performed, were likely to reveal only the presence of

contraband and nothing else.  Caballes, 543 U.S. at 409, 160 L. Ed. 2d at 847, 125 S.

Ct. at 838.

The Supreme Court concluded:

"[T]he use of a well-trained narcotics-detection dog--one that

'does not expose noncontraband items that otherwise would remain

hidden from public view,' [citation]--during a lawful traffic stop,

- 12 -

generally does not implicate legitimate privacy interests.  In this case, the dog[-]sniff was performed on the exterior of [the defendant's] car while he was lawfully seized for a traffic violation.  Any intrusion on [his] privacy expectations does not rise to the level of a constitutionally cognizable infringement."  Caballes, 543 U.S. at 409, 160 L. Ed. 2d at 847, 125 S. Ct. at 838.

In short, "[a] dog[-]sniff conducted during a concededly lawful traffic stop that reveal[ed] no information other than the location of a substance that no individual ha[d] any right to possess [did] not violate the [f]ourth [a]mendment."  Caballes, 543 U.S. at 410, 160 L. Ed. 2d at 848, 125 S. Ct. at 838; see also People v. Driggers, No. 97439, slip op. at 7 (July 5, 2006), ____ Ill. 2d ____, ____, ____ N.E.2d ____, ____ (so interpreting the Supreme Court's decision in Caballes).

### 3. Application of Caballes to the Present Case

The Supreme Court agreed, in Caballes, 543 U.S. at 407, 160 L. Ed. 2d at 846, 125 S. Ct. at 836, that the "manner of execut[ing]" a traffic stop, lawful in its inception, could violate the fourth amendment--but only if the police officer did something that, in itself, "unreasonably infringe[d] interests protected by the Constitution."  Caballes, 543 U.S. at 407, 160 L. Ed. 2d at 846, 125 S. Ct. at 836.  One example would be "prolong[ing] [the traffic stop] beyond the time reasonably required to complete the mission."  Caballes, 543 U.S. at 407, 160 L. Ed. 2d at 846, 125 S. Ct. at 836.  Seizing someone for an unreasonable length of time was, ipso facto, constitutionally forbidden.  No one, however, had a legitimate expectation of privacy possessing marijuana, so the federal constitution did not forbid using a drug-detecting

- 13 -

dog to sniff the exterior of the defendant's car. Caballes, 543 U.S. at 408-09, 160 L. Ed. 2d at 847, 125 S. Ct. at 837-38. Contrary to our own supreme court, a "shift in purpose" was not enough to fall afoul of the fourth amendment. Caballes, 543 U.S. at 408, 160 L. Ed. 2d at 847, 125 S. Ct. at 837. In itself, the dog-sniff did not violate the constitution; therefore, it did not affect the manner of executing the traffic stop (Caballes, 543 U.S. at 409, 160 L. Ed. 2d at 847, 125 S. Ct. at 838) or, to use the terminology of Gonzalez, "change[] the fundamental nature of the stop" (Gonzalez, 204 Ill. 2d at 235, 789 N.E.2d at 270).

By the logic of Caballes, checking for warrants on a passenger changes the fundamental nature of the traffic stop only if (1) it causes the seizure to last longer than the time reasonably required for such a traffic stop or (2) it infringes upon the passenger's legitimate interest in privacy. The record contains no evidence that checking for warrants on the passenger, Evans, caused the traffic stop to be unreasonably long. As for Evans's privacy interests, "[t]he existence of an arrest warrant is a matter of public record." Gist v. Macon County Sheriff's Department, 284 Ill. App. 3d 367, 377, 671 N.E.2d 1154, 1161 (1996). Even if he had an expectation that the warrant for his arrest would be private, this obviously was not an expectation that "'society [was] prepared to consider reasonable.'" Caballes, 543 U.S. at 409, 160 L. Ed. 2d at 847, 125 S. Ct. at 838.

In summary, the stop of Roberson's car was lawful in its inception. We find no evidence that its duration was excessive for a traffic stop. With respect to the warrant check on the passenger, the manner of executing the traffic stop did not unreasonably infringe an interest protected by the constitution. Therefore we find no

- 14 -

violation of the fourth amendment. See People v. Connor, 358 Ill. App. 3d 945, 961-62, 832 N.E.2d 442, 456 (2005) ("the warrant check did not impermissibly prolong [the] defendant's lawful detention[,] and the [police officer] did not need an additional fourth[-]amendment justification for this warrant check").

"Because the defendant makes no distinction between the federal and state provisions in his argument on this issue, we measure his constitutional protections under both using the same standard." People v. Krueger, 175 Ill. 2d 60, 65, 675 N.E.2d 604, 607 (1996). Indeed, the standard is the same. On remand in People v. Caballes, 221 Ill. 2d 282, 338, ___ N.E.2d ___, ___ (2006), our supreme court reaffirmed its adherence to the limited lockstep doctrine by holding that the dog-sniff of a vehicle, during a traffic stop, did not implicate the privacy clause of article I, section 6, of the Illinois Constitution (Ill. Const. 1970, art. I, §6) any more than it implicated the fourth amendment as interpreted by the Supreme Court of the United States.

### D. The Theoretical Possibility of a Delay Between the Arrest and Search

When a police officer lawfully arrests the occupant of an automobile, the officer may perform a contemporaneous search of the passenger compartment in order to remove weapons and prevent the removal of evidence. New York v. Belton, 453 U.S. 454, 460-01, 69 L. Ed. 2d 768, 774-75, 101 S. Ct. 2860, 2864 (1981). The search must "immediately follow[]" the arrest, or else it will not qualify as a search incident to arrest. People v. Wither, 321 Ill. App. 3d 382, 385, 748 N.E.2d 336, 338 (2001). Roberson reasons as follows:

"[T]he record does not specify how much time elapsed

- 15 -

between Evans'[s] arrest and the search, but the State stipulated that the search of the passenger compartment occurred after Evans was placed under arrest. [Citation.] Because warrantless searches are presumptively unreasonable[] and the appellant has not provided a record showing that the search was lawfully conducted, [t]his [c]ourt should not presume that the search of Mr. Roberson's vehicle was validly made incident to Evans'[s] arrest."

Roberson cites People v. Edwards, 74 Ill. 2d 1, 6, 383 N.E.2d 944, 946 (1978), for the proposition that an appellant is responsible for the adequacy of the record on appeal and Foutch v. O'Bryant, 99 Ill. 2d 389, 391-92, 459 N.E.2d 958, 959 (1984), for the proposition that any doubts that arise from the incompleteness of the record should be resolved against the appellant. Roberson further argues that by its acquiescence in the suppression hearing, the State has "[forfeited] any argument about the nature of the search."

Just because the State has forfeited any argument about the nature of the search (other than, as defendant says, an argument founded on the vacation of Harris), it does not follow that the record before us could reasonably support a finding (which the trial court never made) that the police officer delayed searching Roberson's vehicle after arresting Evans. As Roberson admits, "the record does not specify how much time elapsed between Evans'[s] arrest and the search." In the proceedings below, if Roberson intended to pursue a theory that the officer delayed performing the search, he had the initial burden of coming forward with the relevant evidence. See Ramsey, 362

- 16 -

Ill. App. 3d at 614, 839 N.E.2d at 1097. The record is quite adequate to inform us that Roberson never even asserted such a theory in the suppression hearing, let alone came forward with evidence supporting such a theory. We cannot logically hold that the State forfeited its opposition to a theory that Roberson never raised.

## III. CONCLUSION

For the foregoing reasons, we reverse the order granting Roberson's motion to suppress evidence and quash his arrest, and we remand this case for further proceedings.

Reversed and remanded.

McCULLOUGH and MYERSCOUGH, JJ., concur.