Docket No. 105457.

IN THE
SUPREME COURT
OF
THE STATE OF ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v.
GEORGE K. BAILEY, Appellant.

*Opinion filed February 5, 2009.*

JUSTICE BURKE delivered the judgment of the court, with
opinion.

Chief Justice Fitzgerald and Justices Freeman, Thomas, Kilbride,
Garman, and Karmeier concurred in the judgment and opinion.

**OPINION**

Section 12–603.1(f) of the Illinois Vehicle Code (625 ILCS
5/12–603.1(f) (West 2004)) and section 108–1(3) of the Code of
Criminal Procedure of 1963 (725 ILCS 5/108–1(3) (West 2004)) both
provide that a law enforcement officer may not "search or inspect" a
passenger in a motor vehicle solely because the passenger has failed
to comply with the seat belt statute (625 ILCS 5/12–603.1(a) (West
2004)). The primary issue presented in this appeal is whether these
provisions were violated when a warrant check was run on the
defendant, George K. Bailey, a passenger in a vehicle stopped because
both the driver and defendant were not wearing seat belts. For the
reasons that follow, we conclude they were not.

## BACKGROUND

At approximately noon on July 2, 2005, Officer John Parry of the Winnebago County sheriff's office stopped a car after observing that both the driver and front seat passenger, defendant George K. Bailey, were not wearing seatbelts. After obtaining identification from the driver and defendant, Parry returned to his squad car "to listen to the license information and check for warrants." The warrant check revealed that defendant had an outstanding arrest warrant for misdemeanor domestic battery. Officer Parry arrested defendant, handcuffed him, and placed him in the backseat of the squad car. He then searched the interior of the stopped car. The search uncovered cocaine. Defendant was subsequently convicted, in the circuit court of Winnebago County, of possession of a controlled substance with intent to deliver and sentenced to 15 years' imprisonment.

On appeal, defendant contended that his trial counsel was constitutionally ineffective because she failed to file a motion to quash his arrest and suppress the cocaine found in the car. Defendant contended that such a motion would have succeeded because the warrant check conducted by Officer Parry was impermissible under section 12–603.1(f) of the Illinois Vehicle Code (625 ILCS 5/12–603.1(f) (West 2004)) and section 108–1(3) of the Code of Criminal Procedure of 1963 (725 ILCS 5/108–1(3) (West 2004)) and, without the results of the warrant check and the ensuing arrest, there would have been no legal justification for the search of the car. Further, according to defendant, a motion to suppress would have succeeded because the search incident to arrest violated section 108–1(1) of the Code of Criminal Procedure (725 ILCS 5/108–1(1) (West 2004)), as well as the federal and state constitutions. The appellate court rejected these contentions and affirmed defendant's conviction. 375 Ill. App. 3d 1055. We thereafter granted defendant's petition for leave to appeal. 210 Ill. 2d R. 315.

## ANALYSIS

Defendant's sole contention on appeal is that he was denied his sixth amendment right to effective assistance of counsel because his trial attorney failed to file a motion to quash arrest and suppress the

drug evidence found in the car.[1] To establish ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that prejudice resulted from that deficiency. *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). An attorney's performance must be evaluated from counsel's perspective at the time the contested action was taken and will be considered constitutionally deficient only if it is objectively unreasonable under prevailing professional norms. *Strickland*, 466 U.S. at 687-89, 80 L. Ed. 2d at 693-94, 104 S. Ct. at 2064-65. In order to prove prejudice with regard to the failure to seek the suppression of evidence, the defendant must "show that the unargued suppression motion was meritorious and that there is a reasonable probability that the verdict would have been different without the excludable evidence." *People v. Harris*, 182 Ill. 2d 114, 146 (1998), citing *Kimmelman v. Morrison*, 477 U.S. 365, 375, 91 L. Ed. 2d 305, 319, 106 S. Ct. 2574, 2582-83 (1986); *People v. Moore*, 171 Ill. 2d 74, 108 (1996).

As he did before the appellate court, defendant contends that there are four arguments which counsel should have raised in a motion to suppress. We address these arguments in turn.

### *Section 12–603.1(f) of the Illinois Vehicle Code and Section 108–1(3) of the Code of Criminal Procedure*

Section 12–603.1(f) of the Illinois Vehicle Code (625 ILCS 5/12–603.1(f) (West 2004)) provides:

> "A law enforcement officer may not search or inspect a motor vehicle, its contents, the driver, or a passenger solely because of a [seat-belt violation]."

Section 108–1(3) of the Code of Criminal Procedure (725 ILCS 5/108–1(3) (West 2004)) contains identical language:

> "A law enforcement officer may not search or inspect a motor vehicle, its contents, the driver, or a passenger solely

---

[1]Before the appellate court, the State argued that defendant had waived any ineffective assistance of counsel claim. The appellate court rejected this argument (375 Ill. App. 3d at 1059-60) and the State does not renew it here.

because of a violation of Section 12–603.1 of the Illinois Vehicle Code."

Defendant contends that a warrant check is both a "search" and "inspection" within the meaning of sections 12–603.1(f) and 108–1(3) and therefore prohibited under these provisions when the sole offense committed is a seat-belt violation. Thus, according to defendant, the warrant check run by Officer Parry in this case was illegal and his trial counsel could have filed a successful motion to suppress the fruits of the warrant check, including the cocaine, on this basis. We disagree.

"The law uses familiar legal expressions in their familiar legal sense." *Henry v. United States*, 251 U.S. 393, 395, 64 L. Ed. 322, 323, 40 S. Ct. 185, 186 (1920). See also *Case v. Los Angeles Lumber Products Co.*, 308 U.S. 106, 115, 84 L. Ed. 110, 119, 60 S. Ct. 1, 7 (1939) ("we adhere to the familiar rule that where words are employed in an act which had at the time a well known meaning in the law, they are used in that sense unless the context requires the contrary"); 2A N. Singer, Sutherland on Statutory Construction §46:04, at 152-53 (6th ed. 2000) ("if the term utilized has a settled legal meaning, the courts will normally infer that the legislature intended to incorporate the established meaning"). The prohibition against conducting a "search" was included in sections 12–603.1(f) and 108–1(3) when they were enacted in 2003. See Pub. Act 93–99, eff. July 3, 2003; 375 Ill. App. 3d at 1061. Then, as now, the term "search" had a settled meaning in the realm of criminal procedure which was derived from fourth amendment law: an examination of a person's body, property or other area in which the person has a reasonable expectation of privacy. See *Katz v. United States*, 389 U.S. 347, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967); Black's Law Dictionary 1351 (7th ed. 1999).

It has long been held that the existence of an arrest warrant is a matter of public record. *Gist v. Macon County Sheriff's Department*, 284 Ill. App. 3d 367, 377 (1996). Recent decisions continue to adhere to this principle. See *People v. Harris*, 228 Ill. 2d 222, 233 (2008); *People v. Roberson*, 367 Ill. App. 3d 193, 201 (2006). By definition, a person cannot have a reasonable expectation of privacy in public matters. Because a warrant check does not implicate any area of privacy, it is not a search under sections 12–603.1(f) and 108–1(3),

-4-

and it is not prohibited by those provisions. Accordingly, a motion to suppress filed on this ground would not have been successful.

Defendant maintains, however, that even if a warrant check is not a search, it is an inspection within the meaning of sections 12–603.1(f) and 108–1(3) and thus is impermissible. According to defendant, the plain meaning of the term "inspect" is not limited to "physical or corporeal inspections" but may also include the investigation of a passenger's past wrongdoing that occurs during a warrant check. The State, in response, maintains that sections 12–603.1(f) and 108–1(3) say nothing about prohibiting an inspection of a passenger's public records. Thus, in the view of the State, the plain meaning of the statutory provisions is that only the physical inspection of a passenger is prohibited.

The appellate court below concluded that the word "inspect" is ambiguous in the context of sections 12–603.1(f) and 108–1(3). See 375 Ill. App. 3d at 1062-64. The appellate court noted that several dictionaries offer definitions of the term which can be used to support either party's position. Moreover, as the appellate court explained, various intrinsic aids to construction do not resolve the word's meaning but, instead, only add ambiguity. 375 Ill. App. 3d at 1063. We agree with the appellate court that the word "inspect" is ambiguous in the context of this case. Unlike the term "search," the word "inspect" does not have a settled meaning in the law of criminal procedure and may reasonably be read in more than one way.

Because the meaning of the word "inspect" is unclear, it is appropriate to consider legislative history in order to determine the legislature's intent in adopting this term. *People v. Lowe*, 153 Ill. 2d 195, 203 (1992). Senator Cullerton, the sponsor of Public Act 93–99, stated during the debates on the bill that the prohibition against a search or inspection was included to "reassure people" that a police stop for a seat-belt violation "doesn't give [law enforcement] any extra right to go in and search someone's car." The Senator explained that

> "for the purposes of legislative intent, to make it clear. Whatever the current practice is, whatever the current law is, as set by case law or by *** statute, as to allowing police officers to search vehicles, that's not changed by *** this bill."

93d Ill. Gen. Assem., Senate Proceedings, April 3, 2003, at 27-28 (statements of Senator Cullerton).

Additional debate in the Senate further clarifies the legislative intent:

"SENATOR OBAMA:

A second question, because I've heard a couple of concerns. I just want to make sure. With respect to search and seizure rules and regulations, I want to *** clarify this. Under current law, if you are pulled over for a taillight being out *** what are the rules currently governing whether a search can take place, based on an ordinary traffic stop?

***

SENATOR CULLERTON:

Well, *** I assume it's probably more case law than statute, but *** the Supreme Court has kind of set out through their decisions situations where police officers have the right to go in and search in someone's car, in the trunk or whatever. That *** remains the same. Whatever those laws are, whatever that case law is, that remains the same with this bill. We only wanted to make sure people knew that this particular bill doesn't give one any extra right to go into a search where they otherwise could not." 93d Ill. Gen. Assem., Senate Proceedings, April 3, 2003, at 30-31 (statements of Senators Obama and Cullerton).

A discussion between Representatives Franks and Beaubien in the Illinois House reveals the same understanding:

"Franks: 'Okay. I'm not sure I understand… I guess my analysis here says that this would say that they can… that a police officer may not search or inspect a motor vehicle that was stopped solely because of a seatbelt violation.'

Beaubien: 'That's correct, that's part of the law… part of the Act, yes.'

* * *

Franks: 'But isn't it the law right now that you can't search a vehicle unless there's probable cause?'

Beaubien: 'I believe that's correct, but there seemed to be some need to put this in the Bill so it was very specific to all parties involved this would not be used for a method of stopping cars and searching vehicles with the normal exceptions for open view and so forth.'

* * *

Franks: 'Okay. 'Cause I'm just trying to figure out what we're *** doing here and I'm not trying … no offense, I'm just not sure I understand this. Because right now, I know the law has probable cause and I'm not sure what this Bill does any differently than maybe just codifying case law?'

Beaubien: 'Representative Franks, *** this is not an area that I am familiar with. I put the language in there because I believe it sets forth what's already in the law.' " 93d Ill. Gen. Assem., House Proceedings, May 20, 2003, at 26-27 (statements of Representatives Franks and Beaubien).

We think it abundantly clear, based on the legislative debates, that the General Assembly did not intend for sections 12–603.1(f) and 108–1(3) to provide any additional rights above and beyond those guaranteed by the search provision of the federal constitution. Stated otherwise, the term "inspect" in the statutory provisions provides no protection beyond that provided by the term "search." And, as previously noted, a warrant check is not a prohibited search.

In a further argument, however, defendant contends that statements made during the legislative debates show that the meaning of sections 12–603.1(f) and 108–1(3) is controlled by the fourth amendment case law which was in effect at the time the statutes were enacted. See 93d Ill. Gen. Assem., Senate Proceedings, April 3, 2003, at 28 (statements of Senator Cullerton) ("Whatever the current practice is, whatever the current law is, as set by case law or by *** statute, as to allowing police officers to search vehicles, that's not changed by *** this bill"). Defendant notes that, when sections 12–603.1(f) and 108–1(3) were enacted in 2003, this court's opinion in *People v. Gonzalez*, 204 Ill. 2d 220 (2003), was the law. *Gonzalez* held that for a traffic stop to comport with the fourth amendment, the scope of the stop must not be fundamentally altered. Defendant further notes that, in *People v. Harris*, 207 Ill. 2d 515 (2003) (*Harris*

*I*), this court applied the *Gonzalez* scope analysis and held that a warrant check run on a passenger after the driver had been stopped for a traffic violation impermissibly changed the fundamental nature of the stop to a criminal investigation. Defendant acknowledges that *Harris I* was subsequently vacated by the United States Supreme Court (see *Illinois v. Harris*, 543 U.S. 1135, 161 L. Ed. 2d 94, 125 S. Ct. 1292 (2005)), and that the *Gonzalez* scope analysis was overruled by this court in *People v. Harris*, 228 Ill. 2d 222 (2008) (*Harris II*). Nevertheless, defendant argues that *Harris I* should govern our interpretation of sections 12–603.1(f) and 108–1(3) because that decision reflected the legislature's intent at the time the provisions were enacted. And, according to defendant, under the reasoning of *Harris I*, the warrant check run in this case was impermissible.

Defendant misconstrues the scope of *Harris I*. In *Harris I* the warrant check was run on the passenger after the driver had been stopped for making an illegal left turn. *Harris I*, 207 Ill. 2d at 517-18. The warrant check altered the scope of the stop because the passenger had nothing to do with the traffic violation. *Harris I*, 207 Ill. 2d at 526-27. In this case, in contrast, the stop of the car was based on defendant's own failure to comply with the seat-belt law. Indeed, *Harris I* specifically excluded from its holding those situations where the passenger himself has violated a traffic law. *Harris I*, 207 Ill. 2d at 531. See also 4 W. LaFave, Search & Seizure §9.3(c), at 389 (4th ed. 2004) (discussing *Harris I* with approval and noting that warrant checks on passengers should be permissible when " 'the passenger has violated a traffic law' "), quoting *Harris I*, 207 Ill. 2d at 531. *Harris I* thus provides no support for defendant's contention that a warrant check was impermissible in this case.

A motion to suppress filed on the ground that a warrant check was prohibited under sections 12–603.1(f) and 108–1(3) would not have been successful. Defendant therefore suffered no prejudice from counsel's decision not to file a motion to suppress on this basis. Accordingly, this portion of defendant's claim of ineffective assistance counsel is without merit.

### Section 108–1(1) of the Code of Criminal Procedure

Defendant also maintains that a motion to suppress would have succeeded had it alleged that the search of the car violated section 108–1(1) of the Code of Criminal Procedure (725 ILCS 5/108–1(1) (West 2004)). Section 108–1(1) provides:

> "Search without warrant. (1) When a lawful arrest is effected a peace officer may reasonably search the person arrested and the area within such person's immediate presence for the purpose of:
>
> (a) Protecting the officer from attack; or
>
> (b) Preventing the person from escaping; or
>
> (c) Discovering the fruits of the crime; or
>
> (d) Discovering any instruments, articles, or things which may have been used in the commission of, or which may constitute evidence of, an offense." 725 ILCS 5/108–1(1) (West 2004).

Defendant contends that because Officer Parry lacked reasonable cause to search the car for one of the purposes set forth in section 108–1(1), and because the car was not within defendant's "immediate presence" when it was searched, the search violated the statute. According to defendant, trial counsel could have filed a successful motion to dismiss on this basis.

The appellate court below rejected this argument, in part, based on *People v. Hering*, 27 Ill. App. 3d 936 (1975). See 375 Ill. App. 3d at 1069-70. *Hering* explained that nothing in the language of section 108–1(1), or the committee comments thereto, suggests that the statute "is to be exclusive. Rather, it authorizes searches incident to arrest within prescribed bounds as to area and purpose." *Hering*, 27 Ill. App. 3d at 941. In other words, according to *Hering*, section 108–1(1) is permissive, not restrictive. The statute lists several instances in which police "may" conduct a search incident to arrest. See also *People v. Zeller*, 51 Ill. App. 3d 935, 939 (1977) (section 108–1(1) "authorizes the search of an arrestee for a variety of reasons"). But, according to *Hering*, the statute does not state that an officer's authority to search is limited solely to those instances and that any other search is impermissible.

In determining whether an attorney's performance is deficient, every effort must "be made to eliminate the distorting effects of

hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694, 104 S. Ct. 2065. *Hering*, which was decided in 1975, was controlling authority at the time of defendant's trial in 2005. *Hering* foreclosed any argument that the search at issue in this case was illegal under section 108–1(1). "Conduct of a lawyer will not be deemed deficient for his or her failure to make an argument that has no basis in the law." *People v. King*, 192 Ill. 2d 189, 197 (2000). Defendant's trial counsel was not deficient for declining to pursue the argument advanced here. Accordingly, defendant's claim of ineffective assistance of counsel in this regard fails.

*Federal Constitution*

Defendant also contends that the search incident to his arrest violated his rights under the fourth amendment. To understand defendant's argument, it is necessary to place it in context.

In 1969, the United States Supreme Court held, in *Chimel v. California*, 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034 (1969), that police may conduct a search incident to arrest of the arrestee's person and an area within his "immediate control" in order to protect the safety of the officers and prevent the destruction of incriminating evidence. *Chimel*, 395 U.S. at 763, 23 L. Ed. 2d at 694, 89 S. Ct. at 2040. In *New York v. Belton*, 453 U.S. 454, 69 L. Ed. 2d 768, 101 S. Ct. 2860 (1981), the Supreme Court applied *Chimel* to automobile searches and created a bright-line rule to guide police in determining the permissible area of an automobile search incident to arrest: "[W]hen a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *Belton*, 453 U.S. at 460, 69 L. Ed. 2d at 775, 101 S. Ct. at 2864.

Thereafter, in *Thornton v. United States*, 541 U.S. 615, 158 L. Ed. 2d 905, 124 S. Ct. 2127 (2004), the Court applied *Belton* and upheld a search of a suspect's car incident to arrest when the officer's initial contact with the suspect was outside the vehicle. The Court held that so long as the arrestee was a "recent occupant" of a motor vehicle, the police may search the car as an incident to a lawful arrest. *Thornton*, 541 U.S. at 623, 158 L. Ed. 2d at 915, 124 S. Ct. at 2132.

In an opinion concurring in the judgment in *Thornton*, Justice Scalia concluded that where a defendant is handcuffed and secured in the backseat of a squad car, the *Chimel* rationales cannot logically apply because the risk that the defendant would grab a weapon or evidentiary item from his car is "remote in the extreme." *Thornton*, 541 U.S. at 625, 158 L. Ed. 2d at 916, 124 S. Ct. at 2133 (Scalia, J., concurring, joined by Ginsburg, J.). Nevertheless, Justice Scalia did not advocate ovverruling *Belton*. Instead, he contended that the *Belton* bright-line rule should be applied "to cases where it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." *Thornton*, 541 U.S. at 632, 158 L. Ed. 2d at 920, 124 S. Ct. at 2137 (Scalia, J., concurring, joined by Ginsburg, J.).

Noting the foregoing, defendant now "asks this court to adopt as a matter of federal constitutional law an analytical approach which encompasses Justice Scalia's restrictive approach to *Belton* and supports *Chimel*'s narrow construction of the search incident to arrest exception to the warrant requirement, authorizing searches unsupported by probable cause only where necessary to protect officer safety and preserve incriminating evidence." Defendant points out that the United States Supreme Court has recently granted *certiorari* in *People v. Gant*, 216 Ariz. 1, 162 P.3d 640 (2007), *cert. granted*, ___ U.S. ___, 170 L. Ed. 2d 274, 128 S. Ct. 1443 (2008), wherein the Arizona Supreme Court held that once an arrestee is handcuffed, placed in the back of a patrol car, and under the supervision of an officer, the warrantless search of the arrestee's car cannot be justified under *Belton* or *Chimel*. Defendant contends that we should apply the reasoning of Justice Scalia, as well as the Arizona Supreme Court in *Gant,* to the facts of this case and "determine that the warrantless search of [defendant's] car violated the Fourth Amendment" because neither officer safety nor the preservation of evidence was at risk once defendant was placed in the squad car.

Defendant's argument is misplaced. Whether or not this court should adopt a particular application of the *Belton* rule going forward is irrelevant to the question before this court, *i.e.*, whether defendant's trial counsel was constitutionally ineffective in failing to file a motion to suppress. In answering that question, and in particular whether counsel's performance was deficient, the proper focus of our analysis must be on the facts and law known to counsel at the time of

defendant's trial. *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694, 104 S. Ct. at 2065. At that time, case law uniformly held that a search incident to arrest was permissible under facts similar to the ones at bar.

For example, in *People v. Bailey*, 159 Ill. 2d 498 (1994), this court expressly rejected the defendant's argument that a vehicle search was impermissible because the defendant was handcuffed and seated in the back of a squad car and, thus, there was no danger that he could reach weapons or evidence. We stated: "it is *** settled that the validity of a *Belton* search 'is not affected by the circumstance that defendant no longer had effective access to his vehicle when the search was conducted.' " *Bailey*, 159 Ill. 2d at 506, quoting *State v. Grass*, 250 N.J. Super. 74, 77, 593 A.2d 379, 381 (1991).

The appellate court had held likewise. See, *e.g.*, *People v. Kalivas*, 207 Ill. App. 3d 415, 418 (1991) (" 'under *Belton*, a search of the vehicle is allowed even after the defendant was removed from it, handcuffed, and placed in the squad car' "), quoting 3 W. LaFave, Search & Seizure §7.1(c), at 15 (2d ed. 1987); *People v. Allibalogun*, 312 Ill. App. 3d 515 (2000); *People v. Loftus*, 111 Ill. App. 3d 978 (1983). See also *United States v. Arango*, 879 F.2d 1501, 1505-06 (7th Cir. 1989).

As noted, an attorney's performance "will not be deemed deficient for his or her failure to make an argument that has no basis in the law." *King*, 192 Ill. 2d at 197. At the time of defendant's trial, case law was clear that Officer Parry's search of the stopped car did not violate defendant's fourth amendment rights solely because defendant had been secured in the backseat of the squad car. Trial counsel was therefore not deficient for failing to raise this argument in a motion to suppress. Accordingly, this portion of defendant's claim of ineffective assistance of counsel is without merit.

*State Constitution*

Defendant also contends that the search of the stopped car violated his rights under article I, section 6, of the Illinois Constitution. Ill. Const. 1970, art. I, §6. As with his argument with respect to the federal constitution, defendant contends that the search violated the Illinois constitution because he was secured in the squad car at the time of the search and neither officer safety nor the

preservation of evidence was at risk. Again, we believe this argument is misplaced.

In *People v. Stehman*, 203 Ill. 2d 26 (2002), this court considered "whether *Belton*'s bright-line rule extends to a situation where the first contact the defendant has with the officer occurs after [the defendant has exited] the vehicle." *Stehman*, 203 Ill. 2d at 36. The issue was addressed under both the fourth amendment and the Illinois Constitution. *Stehman*, 203 Ill. 2d at 33-34. Although we ultimately concluded that the *Belton* rule did not apply under the facts presented, our analysis discussed the scope of the *Belton* rule at length (*Stehman*, 203 Ill. 2d at 36-42), and necessarily "presumed that, to the extent *Belton* allowed the search, *Belton* was controlling." See 375 Ill. App. 3d at 1076. Thus, *Stehman* may reasonably be read for the proposition that the *Belton* rule applies not only as matter of fourth amendment law, but as a matter of Illinois constitutional law as well. And, as noted previously, case law at the time of defendant's trial uniformly held that the *Belton* bright-line rule applied in situations where the defendant was stopped while in a vehicle, was arrested, and was then secured in a squad car. See, *e.g.*, *Bailey*, 159 Ill. 2d at 506.

Given these facts, we cannot say that trial counsel's conduct fell below an objective standard of reasonableness (*Strickland*, 466 U.S. at 688, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064), when she failed to file a motion to suppress on state constitutional grounds. Accordingly, this portion of defendant's claim of ineffective assistance of counsel also fails.

## CONCLUSION

For the foregoing reasons, we conclude that defendant's trial counsel was not ineffective for failing to file a motion to suppress. Accordingly, the judgment of the appellate court is affirmed.

*Affirmed.*