2021 IL App (1st) 192377-U

THIRD DIVISION
December 1, 2021

No. 1-19-2377

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) ) | Cook County. |
| v. | ) ) | Case No. 09-CR-14350 |
| DONALD SMITH, | ) ) ) | Honorable Luciano Panici |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE ELLIS delivered the judgment of the court.
Presiding Justice Gordon and Justice Burke concurred in the judgment.

**ORDER**

¶ 1    *Held*: Affirmed. Trial court's finding that windows of defendant's car were illegally tinted, thus giving police reasonable suspicion to stop defendant, was not against manifest weight of evidence. Trial court properly denied motion to suppress.

¶ 2    Defendant Donald Smith was driving a GMC Envoy in Lansing on May 15, 2009. His car's front side windows were tinted—or they weren't. If they were, police were justified in stopping him because any tint was illegal, and the gun and drugs they found in the car during the stop were admissible at his later trial. If they weren't, police seized him without reasonable suspicion, and the contraband found was poisoned fruit of an unconstitutional search.

1

¶ 3      Defendant sought to suppress the evidence, but the trial court originally found he lacked standing to do so. We held otherwise and sent this case back to the trial court so it could resolve the motion to suppress on its merits. See *People v. Smith*, 2018 IL App (1st) 151961-U, ¶¶ 50-53. On remand, the court concluded that the officers who testified that the Envoy's windows were tinted were more credible than defendant, who said the windows were not tinted. Thus, the police had a constitutional justification to stop defendant. He returns to us, claiming the court believed the wrong story, based mostly on photos he took of his car months after his arrest that show no tint on the windows. We disagree and affirm.

¶ 4                                  BACKGROUND

¶ 5      We incorporate the facts as we laid them out in our original order remanding this matter to the trial court for further proceedings. *Smith*, 2018 IL App (1st) 151961-U. We discuss only the facts relevant to the remaining issue.

¶ 6      As the sun was setting on May 14, 2009, Lancing Police Officer Mike Ladowski saw a 2005 GMC Envoy with what Ladowski thought were tinted front passenger and driver's side windows. Although the Envoy did not violate any other traffic laws, Ladowski pulled the Envoy over based on the illegal tint.

¶ 7      Ladowski approached the driver's side of the car, while his partner, Officer Damon Tagenhorst, approached the passenger's side. Ladowski said he could only see a "shadow" of Tagenhorst through the car windows. Once beside the car, Ladowski spoke to defendant, who gave him a valid driver's license and insurance card. Ladowski could smell burnt cannabis coming from the SUV but did not see where it was coming from.

¶ 8      Ladowski ordered defendant out of the Envoy, and he and Tagenhorst searched it. Inside, they found a clear plastic back with a green leafy substance and a purple tablet, as well as

a fully loaded handgun in the rear pocket of the front passenger seat. The State later charged defendant with armed violence, aggravated unlawful use of a weapon, and possession of a controlled substance with intent to deliver.

¶ 9    Before trial, defendant moved to suppress evidence recovered after the stop of his car, arguing that police did not have reasonable suspicion that he was violating any traffic laws when they stopped him. At a hearing on the motion, defendant testified that he was driving the 2005 Envoy the night of May 14, 2009, but that his front windows did not have any tint on them. To bolster his story, defendant entered into evidence a series of photographs of his car, including one of the license plate and several of the car's windows. He said the photographs, taken approximately six months after the stop and his arrest, showed the front side windows without any tint on them. Defendant later said he did not have any tint removed from the windows in the time between the stop and when the photographs were taken. Defendant also denied that police found any evidence of a crime in the car.

¶ 10    Ladowski testified that the windows were tinted when he stopped defendant, and that the tint was the basis for the stop. When he was shown the photos at the suppression hearing, Ladowski said that they did *not* depict the car he stopped the night he arrested Smith, because the front windows as depicted in the photos were not tinted. Ladowski said he also could not be sure the car was the same car he stopped, because he could not clearly see the license plate and the windows in the same photo.

¶ 11    The court denied the motion because the defendant denied that the police found anything incriminating in the car; in the court's words, the defendant had no "standing" to challenge the search. A jury later convicted defendant of armed violence, possession of a controlled substance (MDMA), and aggravated unlawful use of a weapon, and the court

sentenced him to 15 years in prison.

¶ 12      On direct appeal, we rejected the court's conclusion that defendant had no standing to challenge the seizure and search. *Smith*, 2018 IL App (1st) 151961-U, ¶ 49. Turning to the merits of the challenge, we noted a factual dispute between defendant's and Ladowski's testimony as to whether the defendant's photos truly and accurately depicted the condition of the windows on the date that the police stopped defendant's vehicle. We remanded this matter to the trial court to resolve that disagreement and determine if the traffic stop was supported by reasonable suspicion. *Id.*

¶ 13      Back in the trial court, the parties stipulated to a transcript of the original suppression hearing as well as the photos defendant took of the car. They also stipulated that Officer Tagenhorst would testify that, on May 14, 2009, he was with Officer Ladowski when they pulled over the Envoy that Smith was driving because the car had tinted front and passenger side windows. No other testimony was heard.

¶ 14      The court found that the police had reasonable suspicion to stop defendant because the windows were illegally tinted at the time of the stop. In doing so, the court found defendant's testimony not credible and gave little weight to the photos because they were taken in November 2009, months after the May stop. Recognizing the ultimate question was who was more credible, the court believed Ladowski's and Tagenhorst's testimony that the windows were tinted, and police thus had reasonable suspicion to stop the Envoy.

¶ 15      We allowed defendant's late notice of appeal.

¶ 16                               ANALYSIS

¶ 17      Both the fourth amendment to the U.S. Constitution (U.S. Const. amend. IV) and its Illinois counterpart (Ill. Const. 1970, art. I, § 6) guarantee citizens the right to be free from

unreasonable searches and seizures. *People v. Gaytan*, 2015 IL 116223, ¶ 20. Stopping a car for a suspected violation of the law constitutes a seizure, even if the stop is brief and for a limited purpose. *People v. Jones*, 215 Ill. 2d 261, 270 (2005).

¶ 18       Police may reasonably stop a vehicle when they have reasonable, articulable suspicion that a traffic violation has occurred. *People v. Hackett*, 2012 IL 111781, ¶ 20. In the context of a traffic stop, police must have a particularized and objective basis for suspecting that the person they stopped violated the law. *Gaytan*, 2015 IL 116223, ¶ 20. The officer's belief that a violation has occurred need not rise to the level of probable cause, but the officer must be able to point to specific and articulable facts that, taken with rational inferences from them, reasonably warrant a brief, investigatory stop. *Hackett*, 2012 IL 111781, ¶ 20.

¶ 19       When we review the trial court's ruling on a motion to suppress, we apply a bifurcated standard of review. *People v. Sadeq*, 2018 IL App (4th) 160105, ¶ 49. We give great deference to the trial court's factual findings and will reverse them only if they are against the manifest weight of the evidence. *Gaytan*, 2015 IL 116223, ¶ 18. A finding is against the manifest weight of the evidence if the determination is not based on the evidence presented, or the opposite conclusion is clearly evident. *In re D.F.*, 201 Ill. 2d 476, 498 (2002). But we review *de novo* the trial court's legal ruling on whether the evidence should be suppressed, giving no deference to the trial court. *Gaytan*, 2015 IL 116223, ¶ 18.

¶ 20       On a motion to suppress evidence, the defendant bears the burden of persuasion that a search or seizure was unlawful. 725 ILCS 5/114-12(b) (West 2008); *People v. Roberson*, 367 Ill. App. 3d 193, 195-96 (2006). The burden of production, or coming forward with evidence, begins with the defendant, who must make a *prima facie* case that the police unlawfully searched or seized him. *Roberson*, 367 Ill. App. 3d at 196. If he does, the burden of production shifts to the

State, which must come forward and present evidence justifying the police intrusion. *Id.* But the ultimate burden to prove the seizure was unlawful remains with the defendant. *People v. Gipson*, 203 Ill. 2d 298, 307 (2003).

¶ 21    The law in this case is straightforward. At the time the police stopped defendant's vehicle, it was illegal to have any tint on the front side windows of a vehicle. See 625 ILCS 5/12-503(a) (West 2008). An illegally tinted front driver or passenger window would permit an officer to stop a vehicle to investigate a traffic violation. *See People v Hackett*, 2012 IL 111781, ¶ 20; *People v. Dunmire*, 2019 IL App (4th) 190316, ¶¶ 88-90. So if the windows were tinted, the stop was reasonable, and no fourth amendment violation occurred. The only question is who was telling the truth—were defendant's car windows tinted at the time he was pulled over?

¶ 22    At the suppression hearing, Ladowski said he stopped the vehicle because he saw a dark tint on the front and side passenger windows when defendant drove by. When he approached the Envoy after it stopped, Ladowski approached the driver's side, while Tagenhorst went to the passenger's. Ladowski could only see a "shadow" of Tagenhorst through the windows because of the dark tint on them. On remand, the parties stipulated that Tagenhorst would also testify that the windows were tinted, which was why he and Ladowski stopped the Envoy.

¶ 23    Neither Ladowski nor Tagenhorst were impeached, but defendant contradicted their version of events. He said the car's front windows had no tint, and he was not impeached, either. And unlike the officers, he offered a series of photos of the car, taken during the day, which showed no tint on the front side windows. Defendant said they depicted his car as it appeared the night of the stop, though he admitted he did not take the photos until approximately six months after his arrest. In the photos. the front windows are not tinted, and he could clearly see his dog

6

in the back seat of one of the photos.

¶ 24        When defense counsel showed Ladowski the photos to challenge his recollection, the officer demurred, saying he could not be sure the car in the photo was the same one he pulled over the night defendant was arrested. And if it was the same car, Ladowski said, the photos did not depict it as he remembered it.

¶ 25        Defendant's argument centers around these photos. First, the State offered none of its own photos of the car the night of the arrest to counter defendant's photos. Second, Ladowski's testimony was unbelievable and unreliable because he did not admit the photos were of the same car, and if they were, how the tint had inexplicably disappeared. And last, since the State offered no evidence that defendant removed the tint after his arrest, his testimony should have been afforded more weight and credibility than Ladowski's. Thus, in defendant's mind, the opposite conclusion—that the windows were *not* tinted—is clearly evident, and the trial court manifestly erred.

¶ 26        We are not convinced. The fact that the State did not present any photos of the tinted windows does not mean that defendant's photos unequivocally prove the windows were not tinted. Defendant admitted the photos were taken months after the initial stop. And though he testified that he did not have the tint removed from them between the time of the stop and the time he snapped the photos, Ladowski's testimony suggested otherwise. With this competing testimony, the circuit court was not required to find the photos persuasive.

¶ 27        Ladowski's testimony that the photos show a different car, or updated windows on the same car, is not so unbelievable that it renders the court's ultimate conclusion here contrary to the evidence. While Ladowski may have been a bit noncommittal when questioned about the photos, he essentially said the photos did not show the car windows as they appeared when he

7

pulled defendant over. Nothing in the record clearly and firmly calls that into doubt.

¶ 28　　We defer to a trial court's findings of fact because the trial judge is in a superior position to determine witness credibility, assign weight to various testimony, and resolve conflicts between competing evidence. *People v. Jones*, 215 Ill. 2d 261 (2005). The trial court here saw the witnesses and heard their testimony. Even though the judge here had to make a ruling years after hearing the evidence, the record shows he carefully examined the testimony, recalled the details of it, and quickly recognized this was a question of who was most credible. In any event, an opposite conclusion is not clearly evident, and it is not our place to substitute our judgment for that of the trial court. *See People v. Wells*, 403 Ill. App. 3d 849, 854 (2010).

¶ 29　　Nevertheless, defendant claims that, since the State never offered any evidence to rebut his photographs, the State "failed to meet its burden" to prove the windows were illegally tinted. We cannot agree for two reasons. First, the State did respond to the photographs—not with photographs of its own, but with the officer's testimony calling into question whether those photographs truly and accurately depicted the car and its windows as they appeared on the night of defendant's arrest. The law does not require the State to mirror the defendant's evidence in such a way that, if the defendant submits photographs, so must the State.

¶ 30　　And second, in any event, defendant misstates the burden. The State never has the burden of proof on a motion to suppress. As noted, if the defendant satisfies his initial burden of *production* by producing *prima facie* evidence of a fourth amendment violation, the burden of production then shifts to the State to justify the police conduct. *Gipson*, 203 Ill. 2d at 307. But the burden of *persuasion*—the burden of proof—remains with the defendant at all times. *People v. Brooks*, 2017 IL 121413, ¶ 22; *Gipson*, 203 Ill. 2d at 307. The court obviously found that defendant did not meet that burden; it believed the officers' testimony over that of defendant.

¶ 31    We find no basis to overturn the trial court's findings of fact, as they were supported by the evidence, and the opposite conclusion is not clearly evident. Based on the trial court's findings of fact that defendant's windows were illegally tinted, we find no reason to disagree with the trial court's ruling that the officers had reasonable suspicion to stop defendant's vehicle. We thus uphold the trial court's denial of the motion to suppress.

¶ 32                              CONCLUSION

¶ 33    The judgment of the circuit court is affirmed.

¶ 34    Affirmed.